**HOUSTON HEAVY EQUIPMENT COMPANY, INC., Plaintiff,**

v.

**Ed GOULD, et al., Defendants.**

**Civil Action No. H–92–3706.**

United States District Court,
S.D. Texas.

July 12, 1996.

Timothy L. Wentworth, Houston, Texas, for Plaintiff.

Gary G. Lyon, Dallas, Texas, for Defendants.

Opinion on Summary Judgment

HUGHES, District Judge.

### 1. *Introduction.*

An equipment company repaid a bank loan six months before it filed for bankruptcy. Because two officers of the company guaranteed the loan, the bankruptcy trustee seeks to avoid the loan payment on the theory that the bank assumed the character of the guarantors as an insider-creditor. Because the bank was not an insider, the trustee will take nothing from the bank. The repayment was also in the ordinary course of business, evading avoidability for a second reason.

A trustee may avoid transfers for the benefit of insider-creditors of the debtor made up to one year before the debtor declares bankruptcy. Officers are insiders. When they guarantee loans they become creditors to the company, or insider-creditors. A bank, however, does not become an insider to a borrower by loaning it money, and a bank does not become an insider to a borrower by requiring insiders to guarantee the loan.

### 2. *Background.*

In December of 1987, Fidelity National Bank lent $200,000 to Houston Heavy Equipment Company, Inc. It was to be paid back on demand or in one year. The note was secured by a lien on equipment, lien on real property, and guarantees by Bob C. Fairchilds and Ed Gould. Fairchilds and Gould were the principal officers of the company. The company renewed the loan in 1988 and 1989. Six months before declaring bankruptcy, the company paid the bank $202,893.14 to retire the loan fully, principal and interest. On receipt of the payment, Fidelity released the liens and the guarantees.

The estate seeks to avoid this last payment to the bank, claiming it is a preferential, exceptional transfer to an insider within one year of the petition.

### 3. *Insiders.*

■ If a debtor transferred money for the benefit of an insider-creditor in the year before it declared bankruptcy outside of the ordinary course, then the trustee may avoid the transfer. An insider-creditor may be a director, officer, general partner, or control person of the debtor company. If the debtor made a transfer of money to someone other than an insider-creditor, the trustee can avoid the transfer only if it was made within ninety days before the debtor filed for bankruptcy. 11 U.S.C. § 547(b) (1996); 11 U.S.C. § 101(31)(B) (1996).

Fairchilds and Gould are insiders because they were officers of the debtor. As insiders, an exceptional transfer of money for their benefit up to a year before the company declared bankruptcy may be avoided by the trustee. When Fairbanks and Gould guaranteed the company's loan, they became contingent creditors of the company. Guarantors become contingent creditors because they have a potential claim for reimbursement against the debtor if it defaults on a loan and the guarantors have to satisfy the debt. An entity with a monetary claim against a debtor's estate is a creditor to the debtor. *In re Midwestern Cos., Inc.,* 102 B.R. 169, 171 (W.D.Mo.1989).

Fidelity, on the other hand, is not an insider of the debtor. The code carefully defines who is an insider, and Fidelity does not meet the criteria. Nothing about obtaining a guaranty for a loan makes a bank an insider to the debtor. Because Fidelity is not an insider-creditor and because the debtor paid

the loan six months before filing for bankruptcy, the trustee may not avoid the transfer.

### 4. *For the Benefit of.*

Some courts, however, have held that a bank is an insider by misconstruing the phrase "for the benefit of" in the code to apply to receipts by creditors that may have had a consequential benefit to insiders. *See Levit v. Ingersoll Rand Fin. Corp.,* 874 F.2d 1186, 1194 (7th Cir.1989); *In re Meridith Hoffman Partners,* 12 F.3d 1549, 1555 (10th Cir.1993).

■ "For the benefit of" does not mean "benefits." The phrase in the code comes encrusted with legal meaning that makes it distinct from a mere incidental, collateral benefit. A transfer made to relieve a debt owed to the transferee is distinguishable from the relief from potential liability that a guarantor of that debt might enjoy as a consequence of the debtor's paying its independent obligation. A payment for the benefit of an insider is a transfer for which the debtor has no independent liability. The purpose of the payment must be the discharge of a liability of the person for whom the transfer is made, leaving aside the obvious case of gratuitous deposits for the benefit of insiders. Every payment benefits a variety of related and unrelated entities; tracing every consequential benefit for ultimate "benefits" extrudes the statute far beyond its clear, reasonable terms. *See Swanee Paper Corp. v. F.T.C.,* 291 F.2d 833, 836 (2d Cir. 1961) (recognizing that a supplier paying a third party may indirectly benefit a customer but not be specifically for the benefit of that customer).

If a debtor pays a third party whom it owes nothing and if the payment discharges a direct obligation of an insider, then the estate should recover it; this would cover direct and indirect payment to insiders or "to or for the benefit of" insiders, as the statute says it. The key to a payment for the benefit of an insider is the absence of a direct obligation of the debtor. In paying its note at Fidelity, Houston Heavy was discharging its direct obligation to the bank; the bank for its purposes had acquired dependent obligations of others that were parallel to the debtor's obligation.

Even in instances when no benefit was actually derived, the code has been applied to defeat a transfer to a creditor who had acquired dependent relations with insiders. In one case, the shareholders had guaranteed the bottom $150,000 of a $500,000 loan. When the corporation paid the top $50,000 of the loan within one year of the petition, the bank was made to repay the estate. *In re Cannon Ball Indus., Inc.,* 150 B.R. 929 (N.D.Ill.1992).

### 5. *Consequences of Misreading.*

When a bank requires a principal of the company to guarantee its debt, the creditor obtains two advantages: First, the bank acquires a second source of repayment if the primary obligor defaults; second, it acquires as a monitor a person who has a heightened stake in the survival of the business in general and in the repayment of the bank loan in particular. The guarantee reduces the bank's risk because of the increased monitoring done by the guarantor.

Next, when the bank has the additional source of funds and the monitor, it is able to reduce the interest charged to the company. Misreading "for the benefit of" removes the bank's reason for having charged lower interest without compensating its loss. Assuming that the payment was made because of its multiple levels of security, the bankruptcy process withdraws the payment the bank got but prohibits the bank from retroactively adjusting its risk premium. The high-interest lenders get the benefit of the payment refunded from the cautious bank and the benefit of their own high interest rates.

Equity—the mother of bankruptcy—requires that either the high-interest creditors disgorge the extra interest they received or the bank be allowed additional interest. The better rule is to read the code as it would be interpreted under the commercial or trust law, recognizing the creditor with the insider's guarantee as merely a careful third-party lender.

Naturally, all creditors benefited by the bank's imposition of increased monitoring, without sharing in its cost.

### 6. Nature of Guarantees.

Extending credit in exchange for capital, goods, and services is inherently risky, and the requirement for security is universal. Prudent creditors often secure loans with a pledge of personalty, a collateral assignment of a security interest in property, a restriction on business practices, or guarantees by others. When debtors must furnish outside guarantors for creditors, they often turn to company officials, the final purchaser, or parent companies. Usually the guarantor is someone closely affiliated with the debtor. Only someone with a direct and substantial relation to the debtor will be motivated to participate in the risk by issuing a guaranty.

The relation among the bank, the debtor, and the guarantors is triangular. The bank is at the apex of a triangle. The debtor and guarantor are the base angles, with the base itself being the insider relation, if it exists. The side of the triangle between the guarantor and bank is merely an insurer-assured relationship. The side between the bank and the debtor is merely a creditor-debtor relationship. The bank, rather than paying a premium to a third-party, finds someone with an interest parallel to the debtor and takes his guaranty.

The bank is not closely linked to the debtor, except by the loan. The bank allows the loan *because of* the association between the debtor and the guarantors. A consequential, collateral benefit of loan guaranteeing is to dissuade default and to eliminate other less efficient burdens on the lending process. The guarantor, therefore, will have the ability to monitor the practices of the debtor, like a general contractor over his subcontractor. The creditor then has a third party with an interest in assuring that the debtor is being prudent. This reduces the monitoring burdens on the creditor and the cost of alternative security to the borrower. The association between the debtor and the guarantor is a bond of mere economic practicality. In either case, the guarantors are independent of the bank until they are tied to the bank through the guarantees.

Creditors who do not acquire a guarantee accept the risk of having no recourse if the debtor files bankruptcy. The prudent creditor requires a security. The risk-preferring creditor chooses to make unsecured loans in return for compensation. Unsecured creditors often charge higher interest rates or greater transaction fees to offset the risk. These creditors receive benefits that secured creditors bypass.

Allowing a trustee to succeed against a secured creditor beyond the 90-day period rewards only the unsecured creditor. The debtor paid an outstanding debt to a valid creditor. That the debt was secured by an insider to the debtor is immaterial. The *creditor* is not an insider even when the *guarantor* is. Allowing the trustee to avoid the transaction and disburse the money to all creditors allows unsecured creditors to collect increased fees and interest while still enjoying the security of a guaranteed loan. Discriminating among non-insider-creditors based solely on the identity of guarantors is irrational and serves only to increase the cost of extending credit.

### 7. Ordinary Course of Business.

▮ Even if the bank were an insider, the loan was paid in the ordinary course of business. The ordinary course of business exception requires proof that the debt and its payment are ordinary in relation to past practices between debtor and creditor and that the payment was ordinary in relation to prevailing business practices. *In re Grand Chevrolet, Inc.*, 25 F.3d 728, 732 (9th Cir. 1994).

▮ A trustee may not avoid a transfer in the ordinary course of business of the debtor and the transferee even if insiders are involved. 11 U.S.C. § 547(c)(2)(A) (1994). The original loan was made in 1987. It was to be paid back on demand or, at the latest, in one year. The company maintained the loan for a year and renewed it the next two years. On each occasion, value was given by Fidelity in the form of an extension of credit. Six months before the company declared

bankruptcy, it voluntarily repaid the loan in full, plus interest.

The trustee argues that the company's payment and the bank's acceptance was outside the ordinary course of business because it was made one month before the loan's maturity date. When the debt must be paid back on demand, however, it is customary for a commercial business to pay the debt before demand even if it has not fully matured. The loan was paid voluntarily without insistence, collection threats, or legal enforcement. The trustee has no evidence that the bank took advantage of the company when its financial condition deteriorated. The debt was not paid on the eve of bankruptcy; rather, it was paid over six months before the company filed for bankruptcy. These data indicate that the loan was repaid in the ordinary course of business.

*8. Conclusion.*

Because the bank is not an insider-creditor and because the loan was repaid in the ordinary course of business, the trustee will take nothing from Fidelity National Bank.