In the matter of CONNOLLY NORTH AMERICA, LLC, Debtor.

Mark H. Shapiro, Trustee, Plaintiff,

v.

Art Leather, Inc., Defendant.

Bankruptcy No. 01–57090.
Adversary No. 03–5070.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

April 12, 2006.

Robert A. Weisberg, Birmingham, MI, for Debtor.

Mark Shapiro, Tracy Clark, Steinberg, Shapiro & Clark, Southfield, MI, for Plaintiff.

Judy B. Calton, Aaron Silver, Honigman Miller Schwartz and Cohn LLP, Detroit, MI, Richard W. Paige, Bush Seyfeth Kethledge & Paige, Troy, MI, for Defendant.

## OPINION DENYING MOTION OF DEFENDANT ART LEATHER, INC. FOR SUMMARY JUDGMENT

THOMAS J. TUCKER, Bankruptcy Judge.

This is a preference case in which the Chapter 7 Trustee seeks to avoid and recover from Defendant Art Leather, Inc. ("Art Leather") six pre-petition payments that the Debtor, Connolly North America, LLC, made to GE Capital Commercial Finance, Inc. ("GE Capital"). While the payments were made to GE Capital, allegedly they were made for the benefit of Art Leather. Art Leather has moved for summary judgment. For the reasons stated below, the Court must deny Art Leather's motion.

### I. Facts.

The following facts are not in dispute. Pre-petition, Art Leather sold leather goods to Debtor on account. On February 3, 1999, Art Leather entered into a Factoring Agreement with GE Capital, under which Art Leather sold to GE Capital certain of Art Leather's accounts receivable from Debtor.[1] Under the Factoring Agreement, there were two types of accounts receivable: those that were within a credit limit established by GE Capital, called "Factor Risk Account Receivable"; and those that exceeded the credit limit, called "Client Risk Account Receivable." If Debtor failed to pay in full a "Factor Risk Account Receivable" due only to

---

1. (*See* Factoring Agreement at 2–3 ¶ 2 (Ex. C of Br. In Supp. Of Def.'s Mot. For Summ. J.)).

Debtor's financial inability to pay, GE Capital had no recourse against Art Leather for payment. However, if Debtor failed to pay a Factor Risk Account Receivable for any other reason, GE Capital had full recourse against Art Leather for payment. GE Capital also had full recourse against Art Leather if Debtor failed to pay, for any reason, any "Client Risk Account Receivable." [2]

On September 5, 2001, an involuntary petition for relief under Chapter 7 was filed against Debtor. An order for relief under Chapter 7 was entered on December 17, 2001. On September 30, 2003, the Chapter 7 Trustee filed an adversary complaint against Art Leather seeking to avoid, as preferences, transfers from Debtor to GE Capital during the ninety-day preference period totaling $9,806,722.59,[3] and (2) to recover these funds from Art Leather.[4] On December 19, 2003, the Chapter 7 Trustee filed an amended complaint in which he added GE Capital as a Defendant.

On February 9, 2004, GE Capital filed a motion to dismiss the claim against it, arguing that the two-year limitations period for avoidance actions under 11 U.S.C. § 546(a)[5] had expired on December 17, 2003, two days before the Trustee filed his amended complaint. On February 24, 2004, the Court entered a stipulated order dismissing with prejudice the amended complaint as to GE Capital only.

After the remaining defendant, Art Leather, moved for summary judgment, the Court held a hearing, required certain post-hearing briefs, and took the motion under advisement.

## II. Jurisdiction.

This Court has subject matter jurisdiction over this bankruptcy case and adver-

---

**2.** (*Id.* at 3 ¶ 2.)

**3.** In his summary judgment brief, the Trustee has conceded that two of the transfers made during the preference period, totaling $739,348.37, are subject to the contemporaneous exchange defense under 11 U.S.C. § 547(c)(1), and that Art Leather is entitled to a subsequent new value defense under 11 U.S.C. § 547(c)(4) totaling $5,808,808.52. The Trustee's avoidance-and-recovery claim remaining, then, is for a maximum principle amount of $3,258,565.63.

**4.** The Trustee's original and amended complaints also stated fraudulent transfer claims, but the Trustee has since abandoned those claims. At a scheduling conference on February 23, 2004, counsel for the Trustee represented to the Court that this adversary proceeding was now "strictly a preference action," and that he had dismissed all counts in the amended complaint related to any fraudulent transfer actions (Counts II–IV). Consistent with these statements, in the briefing regarding Art Leather's motion for summary judgment, both parties characterized this adversary proceeding as a preference action, and there was no mention of fraudulent transfer counts in the briefing or

at the hearing on Art Leather's motion for summary judgment. There is no order in the record reflecting the dismissal of these fraudulent transfer counts, but the Court deems them abandoned by the Trustee based on the Trustee counsel's statements at the February 23, 2004 hearing. This leaves only Count I, the preference count, and Count V, which seeks disallowance of Art Leather's claim based on 11 U.S.C. § 502(d).

**5.** Section 546(a) provides:

 (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
 (1) the later of—
 (A) 2 years after the entry of the order for relief; or
 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
 (2) the time the case is closed or dismissed.
 11 U.S.C. § 546(a)(1).

sary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D.M.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## III. Discussion.

### A. Summary judgment standard.

Fed.R.Civ.P. 56(c), made applicable to bankruptcy adversary proceedings by Fed.R.Bankr.P. 7056, provides that a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149–50 (6th Cir.1995), the court elaborated:

> The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or may merely rely upon the failure of the nonmoving party to produce any evidence which would create a genuine dispute for the [trier of fact]. Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue. If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by [the trier of fact]. In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party. However, if the evidence is insufficient to reasonably support a ... verdict in favor of the nonmoving party, the motion for summary judgment will

be granted. Thus, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff.

. . .

Finally, the Sixth Circuit has concluded that, in the "new era" of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)], *Celotex* [*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)] and *Matsushita* [*Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)], trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining whether the moving party has met its burden, the court must "believe the evidence of the nonmovant, and draw all justifiable inferences in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999) (relying on *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir. 1992)).

### B. Art Leather's argument that it is not "the entity for whose benefit such transfer was made" under 11 U.S.C. § 550(a)(1).

The parties agree that the transfers at issue were made by Debtor to GE Capital, not to Art Leather. And the Trustee does not claim that Art Leather subsequently

received a transfer of the funds; so Art Leather is not a subsequent transferee subject to possible recovery under 11 U.S.C. § 550(a)(2). In order to recover any avoided transfers in this case from Art Leather, therefore, the Trustee must demonstrate that Art Leather is "the entity for whose benefit such transfer was made" with the meaning of § 550(a)(1).[6]

Art Leather argues that the Trustee cannot demonstrate this, for two reasons. First, Art Leather argues, the Trustee must prove that Debtor intended to benefit Art Leather in making these transfers to GE Capital, and the Trustee cannot prove such an intent. In arguing that such a subjective intent requirement exists, Art Leather cites *Danning v. Miller (In re Bullion Reserve of North America)*, 922 F.2d 544 (9th Cir.1991). Second, Art Leather argues that the Trustee must prove that Art Leather actually received a benefit from the transfers at issue, and cannot do so.

The Court cannot grant summary judgment on either of these grounds. First, the Court agrees with Art Leather that the Debtor's intent to benefit Art Leather is required. But Art Leather has not demonstrated that no genuine issue of material fact exists on that issue. Second, genuine issues of material fact preclude summary judgment based on Art Leather's no-benefit argument.

**1. Art Leather's subjective intent argument.**

 In the *Bullion Reserve* case cited by Art Leather, the United States Court of Appeals for the Ninth Circuit held that the phrase "the entity for whose benefit such transfer was made" in § 550(a)(1):

> implies a requirement that, in transferring the avoided funds, the debtor must have been motivated by an intent to benefit the individual or entity from whom the trustee seeks to recover. It is not enough that an entity benefit from the transfer; the transfer must have been made for his benefit.

922 F.2d at 547 (*quoting Merrill v. Dietz (In re Universal Clearing House Co.)*, 62 B.R. 118, 128–29 n. 12 (D.Utah 1986)).

There appears to be little discussion of this issue in the case law. *Bullion Reserve* cited only *Merrill v. Dietz*, and that case, in turn, cited no authority for the proposition that the debtor's subjective intent to benefit the defendant is required under § 550(a)(1) to make one a transfer beneficiary. The parties have cited no other cases on this point, and neither the parties nor the Court is aware of any Sixth Circuit case on this issue. The Seventh Circuit raised this issue in a 1988 decision, but did not discuss it further. *See Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 895 (7th Cir.1988).[7]

---

6. Section 550(a) provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

7. In *Bonded Financial*, the court noted among "difficult questions" under § 550(a)(1) is "[t]o what extent does 'intent' matter under § 550(a)(1)? If intent matters, whose? To what extent must courts find the true economic benefits of a transaction?" The court found it unnecessary to answer those questions, however, because it concluded that the defendant was a subsequent transferee under § 550(a)(2), and therefore could not, as a matter of law, be an "entity for whose benefit such transfer was made" under § 550(a)(1). *Id.*

In 1994, a bankruptcy court in the District of Utah interpreted a Tenth Circuit decision as having rejected a subjective intent requirement under § 550(a)(1), in *C F & I Steel Corp. v. Conners (In re C F & I Fabricators of Utah Inc.)*, 163 B.R. 858, 877–78 (Bankr.D.Utah 1994). The bankruptcy court cited *Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Brothers Drilling, Inc.)*, 892 F.2d 850 (10th Cir.1989)(affirming the judgment of the district court published at 97 B.R. 77 (W.D.Okla.1988) and adopting it). The Tenth Circuit decision, in turn, merely adopted the opinion of the district court, without discussion.[8]

More recently, in *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570 (Bankr.N.D.Ill.2005), the bankruptcy court held the defendant to be a transfer beneficiary under § 550(a)(1) without requiring that the transferor intended to benefit him. *Id.* at 590–92. Rather, the court held, it is sufficient to create transfer beneficiary status if the benefit alleged meets three requirements: "(1) it must actually have been received by the beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary." *Id.* at 590, 592 n. 18. But the court did not discuss its reasons for apparently concluding that no intent-to-benefit requirement exists under § 550(a)(1). And the court noted that in any event, such a requirement had been met in that case. *Id.* at 592 n. 18.

Arguably, the transfer beneficiary language of § 550(a)(1) is ambiguous on this issue. On the one hand, the phrase "the entity for whose benefit such transfer was made" may imply that the transferor (bankruptcy debtor) intended to benefit the target of the trustee's recovery action, as *Bullion Reserve* holds. On the other hand, the phrase may simply mean the

entity (or entities) who benefitted from the transfer. There is no meaningful legislative history regarding this phrase in § 550(a)(1). *See Bonded Financial*, 838 F.2d at 896.

█ The Court agrees with the Ninth Circuit's holding in *Bullion Reserve*, as the correct and more natural reading of the words used in § 550(a)(1). Thus, if the Trustee avoids one or more of the transfers at issue in this case, the Trustee must then demonstrate that Debtor intended to benefit Art Leather in making the transfer(s) to GE Capital. In addition, the Trustee must also prove that Art Leather received a benefit from the transfer(s) meeting the three requirements stated in the *McCook Metals* case above (actual, quantifiable, accessible). If the Trustee proves each of these things, he may recover from Art Leather as an "entity for whose benefit such transfer was made" under § 550(a)(1).

In reaching its conclusion on this intent-to-benefit issue, the Court has considered the so-called *"Deprizio"* line of preference cases. Those cases interpreted § 547(b)(1), which includes as one of the elements of an avoidable preference that the transfer be "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). The cases held that a transfer was "for the benefit of a creditor" when a debtor's prepetition transfer to the debtor's lender reduced or eliminated the contingent liability of an insider of the debtor who had guaranteed the debt. This is so, the courts held, because the insider-guarantor of the debt was a "creditor" of the debtor, and because the debtor's payment to the lender (1) reduced that insider-guarantor's contingent claim against the debtor, and (2) reduced the insider-guarantor's exposure

---

8. And the district court opinion did not discuss whether an intent to benefit is necessary under § 550(a)(1). Rather, it involved the issues later resolved in the so-called *Deprizio* line of cases, which are discussed later in this Opinion.

to liability on the guarantee. *See, e.g., Levit v. Ingersoll Rand Fin. Corp. (In re VN Deprizio Constr. Co.)*, 874 F.2d 1186, 1194–98 (7th Cir.1989). A consequence of this was that the trustee could *avoid* preferential transfers made between 90 days and one year before the filing of a bankruptcy petition, because the transfers were "for the benefit of" an insider, *see* 11 U.S.C. §§ 547(b)(1), and (b)(4)(B), and then *recover* them from the lender (a non-insider) under § 550(a)(1) as the initial transferee of such transfers.[9] The Sixth Circuit adopted this approach and this view of § 547(b)(1) in *Ray v. City Bank and Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990).

Neither *Deprizio* nor *C–L Cartage*, the Sixth Circuit case following *Deprizio*, expressly required the plaintiff to prove a subjective intent by the debtor to benefit the insider-guarantor in making the transfer, in order for a transfer to be considered "for the benefit of" the insider-guarantor under § 547(b)(1). Rather, it appears, it was enough that the transfer did benefit the insider-guarantor, as described above.

The language of § 547(b)(1) ("for the benefit of a creditor") is somewhat different from § 550(a)(1)'s language ("the entity for whose benefit such transfer was made"). But the language is similar

enough that the approach taken to § 547(b)(1) in the *Deprizio* cases might support a conclusion that no showing of subjective intent to benefit is necessary under § 550(a)(1) to establish transfer-beneficiary status.

The *Deprizio* cases, however, involved transfers that benefitted an insider-creditor of the debtor. These cases can be viewed as having presumed that the debtor intended to benefit its insider-creditor when it made transfers to the debtor's outside lender, because (1) the insider controlled the debtor; and (2) the transfers benefitted the insider. *See, e.g., Levit*, 874 F.2d at 1195. In the *C–L Cartage* case, for example, the Sixth Circuit justified its holding in part as follows:

> Insiders, using their knowledge and control over the debtor, have an incentive to cause the debtor to prefer particular outside creditors when the insiders themselves derive benefits from those payments. In this case, the Fosters, using their knowledge and control over Cartage, had an incentive to prefer the bank throughout the extended preference period since every payment Cartage made reduced the Fosters' liability to the bank.

899 F.2d at 1495.

The *Deprizio* cases do not, therefore, permit the Court to presume (rebuttably

---

**9.** Both avoidance and recovery from the non-insider in this situation are now precluded on other grounds, due to later amendments to the Bankruptcy Code. First, *recovery* from the non-insider is precluded by the 1994 amendments to the Bankruptcy Code, which added the present provisions of 11 U.S.C. § 550(c). That section provides:

> (c) If a transfer made between 90 days and one year before the filing of the petition—
>
> (1) is avoided under section 547(b) of this title; and
>
> (2) was made for the benefit of a creditor that at the time of such transfer was an insider; the trustee may not recover under

subsection (a) from a transferee that is not an insider.

Second, *avoidance* as to the non-insider is now precluded by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which added new 11 U.S.C. § 547(i):

> If the trustee avoids under subsection (b) a transfer made between 90 days and 1 year before the date of the filing of the petition, by the debtor to an entity that is not an insider *for the benefit of a creditor that is an insider*, such transfer shall be considered to be avoided under this section only with respect to the creditor that is an insider.

or conclusively) that a debtor's transfer that benefitted a *non*-insider was *intended* by the debtor to benefit that non-insider. Rather, such intent must be proven in order to show that such non-insider was "the entity for whose benefit such transfer was made" under § 550(a)(1).

■ On the present record, the Court concludes that Art Leather is not entitled to summary judgment based on this issue, because Art Leather has not demonstrated beyond genuine dispute either that (1) Debtor had no intent to benefit Art Leather when it made the transfers to GE Capital; or (2) that the Trustee cannot prove that Debtor had such intent. Among other possibilities that are not excluded by the evidence in the current record, Debtor may have intended that Art Leather benefit from the payments to GE Capital (*e.g.*, in the ways discussed below), so that Art Leather would continue to sell goods to Debtor on credit. And it is undisputed that Art Leather did continue to sell goods to Debtor on credit after Debtor made the transfers at issue.[10]

### 2. Art Leather's "no benefit" argument.

The Court also concludes that there is a genuine issue of material fact regarding whether Art Leather benefitted from the transfers at issue in a way that meets the "actual, quantifiable, and accessible benefit" test described above. Debtor's pre-petition payments to GE Capital reduced Art Leather's exposure to liability to GE Capital under the recourse provisions of the Factoring Agreement between Art Leather and GE Capital. GE Capital's recourse against Art Leather was two-fold. First, with respect to account receivables falling into the so-called "Client Risk Account Receivable" category, GE Capital

had full recourse against Art Leather if Debtor failed for any reason to pay the receivable to GE Capital. Art Leather admits in its summary judgment reply brief that at least one of the transfers, in the amount of $222,359.98, was payment of such a full-recourse "Client Risk Account Receivable."[11]

The second type of recourse that GE Capital had against Art Leather concerned the so-called "Factor Risk Account Receivables." If Debtor failed to pay any of these account receivables to GE Capital for any reason other than a financial inability to pay, GE Capital had full recourse against Art Leather for payment. Debtor's payment of these receivables to GE Capital, therefore, reduced Art Leather's recourse exposure to GE Capital as well. Moreover, as the Trustee argues, under the factoring arrangement between Art Leather and GE Capital, the Debtor's payment of the "Factor Risk Account Receivables" to GE Capital had the effect of changing the status of what were previously the full-recourse "Client Risk Account Receivables" to the more limited recourse "Factor Risk Account Receivables" category. This reduced Art Leather's recourse exposure, to the benefit of Art Leather.

While it is true, as Art Leather argues, that "the paradigm 'entity for whose benefit such transfer was made'" is a guarantor of the debtor's debt, this is so because the benefit to the guarantor is a reduction or elimination of the guarantor's exposure to liability on its guarantee. *See Bonded Financial Services*, 838 F.2d at 895; *see also Reily v. Kapila* (*In re Int'l Mgmt. Assoc.*), 399 F.3d 1288, 1293 (11th Cir. 2005). While Art Leather was not a guarantor, the benefit it received is analogous to that received by a guarantor in the

---

10. *See* discussion in Part III.E of this Opinion, regarding Art Leather's subsequent new value defense under § 547(c)(4).

11. (*See* Reply Brief in Support of Motion for Summary Judgment at p. 5.)

"paradigm" transfer beneficiary situation—Art Leather benefitted to the extent its exposure to liability (under its recourse agreement with GE Capital) was reduced because of Debtor's transfers to GE Capital. Under the Trustee's theory, Art Leather is "a party whose indemnification obligations or whose own debts are extinguished or reduced by the transfer." *See Baldi,* 319 B.R. at 590 (quoting *Bonded Financial Services,* 838 F.2d at 895).

For these reasons, Art Leather is not entitled to summary judgment based on either its subjective-intent or its no-benefit arguments under § 550(a)(1).

## C. Art Leather's argument that the dismissal of the Trustee's complaint against GE Capital precludes avoidance of the transfers and recovery from Art Leather.

As noted above, it is undisputed that the "initial transferee" of the transfers at issue under § 550(a)(1) was GE Capital, the party to whom Art Leather had sold its accounts receivable, and whom Debtor paid. Art Leather argues that there can be no recovery against it under § 550(a)(1), because recovery may be had only "to the extent that a transfer is avoided under section ... 547." And the transfers at issue may not be "avoided" under § 547, Art Leather argues, because (1) avoidance of the transfers to the initial transferee (GE Capital) is precluded by the statute of limitations in 11 U.S.C. § 546(a) and by the dismissal of the Trustee's complaint against GE Capital with prejudice; and (2) that, in turn, precludes any avoidance of the transfers.

The Trustee argues that he may recover the transfers from Art Leather under § 550(a)(1) to the extent he can demonstrate that the transfers are "avoidable" as to either GE Capital or Art Leather. By "avoidable" as to either GE Capital or Art Leather, the Trustee means that (a) the

elements of a preferential transfer exist under § 547(b); and (b) affirmative defenses under § 547(c) do not exist, when the transfers are analyzed with respect to either the initial transferee, GE Capital, or the alleged transfer beneficiary, Art Leather. And the Trustee argues that it is not necessary to actually avoid the transfers against GE Capital in order to seek recovery of them against Art Leather. Thus, in the Trustee's view, it is immaterial that his avoidance action against the initial transferee GE Capital was time barred under § 546(a) and was dismissed with prejudice.

In support of its position, Art Leather relies in part on the Sixth Circuit decision in *Harrison v. Brent Towing Co. (In re H & S Transp.),* 939 F.2d 355 (6th Cir.1991), and on *Greenwald v. Latham & Watkins (In re Trans–End Tech., Inc.),* 230 B.R. 101 (Bankr.N.D.Ohio 1998). The Trustee disputes Art Leather's interpretation of these cases. Both parties also rely on cases from outside the Sixth Circuit. The Court must reject Art Leather's argument.

To begin with, § 550(a) clearly requires that a transfer be "avoided," at least in part, before the Trustee may "recover" it from anyone. This section uses the word "avoided," not "avoidable." Most often, of course, a trustee seeks both avoidance of a transfer, for example as a preference under § 547, and its recovery, against one or more defendants in the same action.

 Section 547(b) says that the trustee may avoid any transfer of the debtor's interest in property "to or for the benefit of a creditor," § 547(b)(1), if the transfer meets all the other requirements in § 547(b). In a preference case like this one, where the Trustee alleges that there is both an initial transferee (GE Capital) and another party for whose benefit the transfers were made (Art Leather), both of whom were "creditors," the Trustee can

bring an avoidance action against both the initial transferee and the transfer beneficiary. But there is no apparent reason why the Trustee *must* sue both the initial transferee and the transfer beneficiary. There is no reason apparent from the wording of § 547 why the Trustee could not file an avoidance action only against the transfer beneficiary, and if successful in avoiding the transfer, seek recovery under § 550(a)(1) from that transfer beneficiary.

■ The Court concludes that in a preference case, at least, the transfer beneficiary is a proper party defendant to the Trustee's avoidance action, given the wording of § 547(b)(1), which permits avoidance of a transfer "to or for the benefit of a creditor." This phrase contemplates that either the initial transferee or the transfer beneficiary, or both, can be sued for avoidance. The absence of the initial transferee as a defendant in the action, without more, does not preclude avoidance of the transfers at issue under § 547(b).

Although the parties have not cited any cases directly on point, the Court's conclusion is supported by cases cited by the Trustee. The recent Eleventh Circuit decision in *IBT International, Inc. v. Northern (In re Int'l Admin. Services, Inc.)*, 408 F.3d 689 (11th Cir.2005) was an action to avoid and recover fraudulent transfers made by a bankruptcy debtor. Avoidance of the transfers was sought under 11 U.S.C. § 544(b) and Florida's fraudulent transfer statute, which permits avoidance of a transfer made with the actual intent to hinder, delay, or defraud creditors. 408 F.3d at 697. Recovery of the transfers was sought not against any initial transferee, but rather against subsequent transferees of the funds at issue, based on 11 U.S.C. § 550(a)(2). After a lengthy analysis, the Eleventh Circuit held that it was not necessary to sue the initial transferees in this avoidance-and-recovery action;

rather, the plaintiff could choose to sue only subsequent transferees, and seek both avoidance of the transfers under § 544(b) and recovery from the subsequent transferees in the same action. And the plaintiff could do so, the court held, without first avoiding the transfers in an action against the initial transferees. 408 F.3d at 703–08. The court concluded:

> After looking at the statute as a whole, we think Congress contemplated "to the extent that a transfer is avoided" [in § 550(a)] to be a simultaneous as well as successive process. The Trustee here did not have to pursue litigation against [the initial transferees or others] to successfully avoid the transfers of assets to [the defendant subsequent transferees]. Therefore, we hold that Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee.

408 F.3d at 708; *see also Kendall v. Sorani (In re Richmond Produce Co.)*, 195 B.R. 455, 463 (N.D.Cal.1996)(holding that a trustee may avoid a fraudulent transfer under § 548 and recover it from a subsequent transferee under § 550(a)(2) without first avoiding the transfer in an action against the initial transferee).

The cases just cited were avoidance-and-recovery actions against a subsequent transferee, on which recovery was based on § 550(a)(2), rather than against a transfer beneficiary under § 550(a)(1), as in this case. But the reasoning and holding of those cases support the Court's conclusion in this case.

The Court's conclusions are further supported by the wording of 11 U.S.C. § 547(g). That is the provision allocating burdens of proof in a § 547 avoidance action. The language in § 547(g) implies that an avoidance action under § 547 may

be brought against a party from whom "recovery" under § 550(a) is sought, not just the initial transferee. Section 547(g) states:

> For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest *against whom recovery or avoidance is sought* has the burden of proving the non-avoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547(g)(emphasis added). This language contemplates that a "creditor or party in interest against whom recovery... is sought" could be defending against *avoidance* under § 547, by proving one or more of the defenses to avoidability under § 547(c). Section 547(c) sets out only defenses to *avoidance,* rather than to recovery under § 550(a), by setting forth eight circumstances in which the "trustee may not avoid under [§ 547] a transfer."

For these reasons, the Court concludes that the Trustee may seek to avoid the transfers at issue, and then seek their recovery, against and from the alleged transfer beneficiary Art Leather, without avoiding the transfers, either previously or in this case, in an action brought against the initial transferee GE Capital. To succeed, the Trustee must prove, in the words of § 547(g), "the avoidability of" the transfers under § 547(b), and Art Leather must fail to meet its burden of proving, in the words of § 547(g), "the non-avoidability" of the transfers under § 547(c). To the extent this occurs with respect to the transfers at issue, the transfers may be "avoided" within the meaning of § 550(a), and then recovered from Art Leather, if Art Leather was "the entity for whose benefit such transfer was made" within the meaning of § 550(a)(1).

The cases cited by Art Leather do not persuade the Court otherwise. In *Green-*wald v. Latham & Watkins (*In re Trans–End Tech., Inc.*), 230 B.R. 101 (Bankr. N.D.Ohio 1998), the bankruptcy debtor made an allegedly fraudulent transfer to its parent corporation, which later transferred some of the funds to Latham & Watkins for legal services. The trustee filed an action to avoid the transfer and recover from Latham & Watkins the portion of the funds it had received. The trustee did not sue the initial transferee, debtor's parent. As a subsequent transferee, from whom the trustee sought to recover under § 550(a)(2), Latham & Watkins moved to dismiss for failure to state a claim upon which relief could be granted. The bankruptcy court granted the motion, holding that the trustee could not avoid the initial transfer from the debtor to its parent corporation because the limitations period of § 546(a) had expired. Because the Trustee could not actually *avoid* the transfer against the initial transferee, the Court held that the trustee could not *recover* from Latham & Watkins as a subsequent transferee.

The court in *Trans–End Technology* reasoned that a fraudulent transfer that is avoidable under § 548 must be actually avoided, and not merely shown to be avoidable, before it may be recovered from subsequent transferees. Implicit in the court's decision are the related assumptions that a fraudulent transfer cannot be avoided in the absence of the initial transferee as a party, and that such initial transfer cannot be avoided in an action against only a subsequent transferee. The court did not explain in its opinion why these assumptions are valid. And as noted earlier, the Eleventh Circuit in the *IBT* case considered and rejected these assumptions of the *Trans–End Technology* decision. *See* 408 F.3d at 704.

But whether or not the above assumptions in *Trans–End Technology* are valid

with respect to avoidance of a transfer under § 548's, they do not apply in this preference case. In this case, the basis for avoidance is § 547, not § 548, and the avoidance and recovery action is brought against a party alleged to be "the entity for whose benefit" the *initial* transfer was made under § 550(a)(1), not against a subsequent transferee under § 550(a)(2). In combination, these factors distinguish this case from *Trans–End Technology.* As explained above, the preference-avoidance provisions of § 547(b) contemplate that a preferential transfer may be avoided with respect to a transfer that was "for the benefit of a creditor," not just a transfer made "to a creditor." *See* 11 U.S.C. § 547(b)(1). It is therefore permissible for a trustee to seek to avoid preferential transfers and recover them in an action brought only against a transfer beneficiary under §§ 547 and 550(a)(1).

For these reasons, the other cases cited by Art Leather are also distinguishable from this case; none of them involve an action in which the trustee sought to avoid preferences under § 547 and recover them in an action brought against a § 550(a)(1) transfer beneficiary. *See, e.g., Weinman v. Simons (In re Slack–Horner Foundries Co.),* 971 F.2d 577, 580 (10th Cir.1992) (§§ 548/550(a)(2) fraudulent transfer action brought only against a subsequent transferee);[12] *Contemporary Indus. Corp. v. Frost (In re Contemporary Indus. Corp.),* 2001 WL 34630639, at *7 (Bankr.D.Neb.2001)(fraudulent transfer action that failed to name any transferee or party for whose benefit the transfers were made, and all such parties had been released by a confirmed Chapter 11 plan).

The Court also concludes that the Sixth Circuit's decision in *Harrison v. Brent Towing Co.* does not permit summary judgment for Art Leather. In that case,

the debtor H & S Transportation had leased and operated a towboat owned by United Liberty Life Insurance Co. H & S bought fuel for the boat on credit from several fuel suppliers. With each credit transaction, the fuel suppliers acquired statutory liens under federal law against the towboat. During the preference period, the debtor H & S paid several fuel suppliers, thereby extinguishing its antecedent debt to those suppliers and extinguishing their liens against United's towboat. The bankruptcy trustee later filed separate adversary proceedings against four of the fuel suppliers and United, seeking to avoid and recover as preferences the debtor's pre-petition payments to the fuel suppliers. 939 F.2d at 356–57. As the Sixth Circuit noted, each of the fuel suppliers was a "creditor" of the debtor under § 547(b)(1), the preference element that requires that there be a transfer of an interest of the debtor in property "to or for the benefit of a creditor." The court also held that United was a "creditor" of the debtor, because each transaction in which the debtor purchased fuel on credit gave rise to statutory lien on United's towboat, and therefore, gave United a contingent indemnity claim against the debtor. The court described United's contingent claim against the debtor this way: "if the debtor failed to pay its fuel debt, the fuel supplier had a right to execute its statutory liens on United's towboat, ... and if any fuel supplier had executed on such a lien, United would have had a right of indemnity from debtor." *Id.* at 359.

The trustee's actions against the four fuel suppliers were resolved first. The trustee settled with two of the suppliers, and as to the other two suppliers, "the trustee's right to avoid a transfer was defeated by the subsequent new value de-

---

12. In addition to being distinguishable from this case, the *Slack–Horner* decision was criticized and rejected by the Eleventh Circuit in the *IBT* case. *See* 408 F.3d at 704.

fense of section [547(c)(4)]." As to these two fuel suppliers, the Sixth Circuit noted, "[t]herefore, with respect to the transfers to these fuel suppliers section 550(a) never comes into play." *Id.* With respect to the transfers to the two fuel suppliers with which the trustee settled, the Sixth Circuit held, "it is clear that the trustee has received its entitlement to only a single satisfaction under [§§ 550(a) and 550(c).]" *Id.*

For these reasons, the Sixth Circuit held, the trustee could not recover under § 550(a) from United, the alleged transfer beneficiary. Thus, *Harrison* appears to mean, at least, that in an action seeking avoidance of a preferential transfer under § 547 and recovery of the transfer under § 550(a)(1) against an alleged transfer beneficiary, the transfer beneficiary can avoid liability: (1) if the court has already determined in a separate action against the initial transferee that the transfer cannot be avoided, because the *initial transferee* has a complete defense under § 547(c)(4); or (2) in the absence of such a prior determination, to the extent the *initial transferee* gave subsequent new value to or for the benefit of the debtor that meets the requirements of § 547(c)(4); or (3) if the trustee has already received full satisfaction from the initial transferee, as a result of a settlement with the initial transferee, or otherwise, thereby providing the transfer beneficiary with a defense under § 550(d).[13]

*Harrison* may also mean, more broadly, that the alleged transfer beneficiary in a preference case may preclude avoidance of the transfer by demonstrating that the *initial transferee* has *any* of the eight defenses to avoidance under § 547(c). Art Leather's summary judgment motion, however, does not require the Court to decide whether *Harrison* has that broader meaning, or whether in the alternative, *Harri-*

*son* is limited to the initial transferee's defenses, if any, under § 547(c)(4).

In reaching its conclusion, the *Harrison* court referred to the *Deprizio* line of cases discussed in Part III.B.1. of the Opinion. The court noted that its interpretation was "consistent with the 'single transfer' theory recognized in another context by this circuit." 939 F.2d at 359. The Sixth Circuit explained:

The bankruptcy court in this case, in rejecting United's argument that it was entitled to defend the action by invoking the suppliers' new value defenses, relied upon a "two-transfer" theory; namely that under section 550, two preferential transfers may result from one transaction and that each "transfer" must be analyzed separately for purposes of determining whether a trustee may recover against more than one creditor. The district court reversed the bankruptcy court's ruling in this regard, relying on the reasoning of the Seventh Circuit in *Levit,* 874 F.2d 1186:

The two-transfer approach equates "transfer" with "benefit received". Both Lender and Guarantor gain from payment, and each receives a "transfer" to the extent of the gain. The Code, however, equates "transfer" with payments made. Section 101(50) ... says that a transfer is a disposition of property. Sections 547 and 550 both speak of a transfer being avoided; *avoidability is an attribute of the transfer rather than of the creditor.* While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one "transfer", no matter how many persons gain thereby.

---

**13.** Section 550(d) provides: "The trustee is entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d).

*Levit,* 874 F.2d at 1195–96 (emphasis added); *In re H & S Transp. Co.,* 110 B.R. at 831. This court recently adopted the *Levit* analysis in *C–L Cartage,* 899 F.2d 1490. *See also In re Robinson Bros. Drilling, Inc.,* 892 F.2d 850 (10th Cir.1989). Although each of those cases involved insider guarantors within the meaning of 11 U.S.C. § 547(b)(4)(B), the discussion of the term transfer is not limited to that subsection and applies with equal force in this context.

939 F.2d at 359–60.[14]

In its summary judgment motion, Art Leather argues that the Trustee's right to avoid the Debtor's transfers as to GE Capital was defeated, not by a subsequent new value defense under § 547(c)(4), or by some other § 547(c) defense, but by the statute of limitations under § 546(a). Art Leather interprets *Harrison* to give it the benefit of GE Capital's statute of limitations defense, even though the Trustee filed this action to avoid the transfers *against Art Leather* within the time limitation of § 546(a).

The Court concludes that *Harrison* cannot be read so broadly. First, the *Harrison* case had nothing to do with, and did not discuss, any limitations defense under § 546(a). Second, giving a transfer beneficiary the benefit of the initial transferee's § 547(c)(4) subsequent new value defense to avoidance of a transfer, as *Harrison* did, can be justified under the wording of § 547(c), which lists circumstances in which "[t]he trustee *may not avoid* under this section a transfer," (emphasis added) and by the wording of § 547(c)(4) itself. Unlike § 547(c), however, § 546(a) does not purport to list circumstances relating to the transfer, which prevent avoidance of the transfer. It simply states that "[a]n action... under... § 547 ... may not be commenced" after expiration of the limitations period.

In this case, the action to avoid the transfers was commenced within the limitations period, against a party that is a proper defendant in such an action, as discussed above—the alleged transfer beneficiary Art Leather. Because, as the Court has concluded, the Trustee was not required also to name the initial transferee as a defendant in this action, § 546(a) is no bar to this action proceeding against Art Leather.

---

14. The Sixth Circuit also ruled for the alleged transfer beneficiary United on two additional, alternative grounds. First, it held that United also had the benefit of its *own* § 547(c)(4) defense to avoidance, because United had made its *own* subsequent new value advances to the debtor, in addition to the subsequent new value the initial transferee had advanced to the debtor. United had advanced funds to pay for fuel the debtor used in operating United's towboat. *See* 939 F.2d at 360, 360 n. 9.

Second, with respect to the debtor's transfers to the two fuel suppliers who had defeated avoidance based upon their § 547(c)(4) defense, the Sixth Circuit reasoned that United was a "subrogee of the fuel suppliers" under the doctrine of "legal subrogation," and therefore succeeded to the rights of the fuel suppliers, and for that reason was entitled to assert their successful new value defense. 939 F.2d at 360. It is not entirely clear from the Sixth Circuit's opinion and its description of the doctrine of legal subrogation, however, why United was a subrogee of the fuel suppliers. The court's opinion clearly indicated in its opening paragraph that the allegedly preferential transfers that the trustee sought to recover in the case from United were payments made by *the debtor* to the fuel suppliers, not by United. The court's opinion refers to these transfers as arising from "debtor's payments of $149,586.98 made to the fuel suppliers." *Id.* at 356–57. The only payments made by United to the fuel suppliers referred to in the court's opinion appear to be United's payments for later credit purchases of fuel that the debtor made. *See* 939 F.2d at 360, 360 n. 9. But the court does not discuss those payments by United to the fuel suppliers in the preceding section of its opinion on page 360, in its discussion of legal subrogation.

For these reasons, the initial transferee GE Capital's dismissal with prejudice, based on its successful assertion of a statute of limitations defense under § 546(a), does not preclude the Trustee from avoiding the transfers at issue under § 547 and recovering them under § 550(a)(1) from Art Leather, the alleged transfer beneficiary.

### D. Art Leather's summary judgment arguments under §§ 547(b)(1) and (b)(5).

Art Leather also argues in its summary judgment motion that the Trustee cannot meet his burden of establishing the elements for avoidance under §§ 547(b)(1) and (b)(5). Art Leather argues that the transfers were not "for the benefit of" Art Leather within the meaning of § 547(b)(1), because Art Leather did not receive the transfers or any quantifiable benefit from the transfers. For similar reasons, Art Leather argues that the Trustee cannot establish the § 547(b)(5) element as to Art Leather.[15] The Court concludes, however, that Art Leather is not entitled to summary judgment on either of these grounds. In addition to whatever else might be said about these arguments, the Court has concluded, for the reasons stated in Part III. B.2. of this Opinion, that there is a genuine issue of material fact regarding the extent to which Art Leather benefitted from the transfers at issue.

### E. Art Leather's subsequent new value defense argument under § 547(c)(4).

Art Leather and the Trustee agree that Art Leather has a partial defense to avoidance of the transfers at issue under § 547(c)(4), the subsequent new value defense, in the amount of $5,808,808.52. As part of its summary judgment motion, Art Leather seeks a ruling from the Court that this subsequent new value amount must be applied and deducted from any sum otherwise found to be avoidable *after* the Court first reduces the Trustee's avoidance claim by the amount of any transfers subject to Art Leather's "ordinary course of business" defense under § 547(c)(2). The Trustee disputes that approach and proposes a different methodology of applying Art Leather's § 547(c)(2) and (c)(4) defenses.

The Court finds it unnecessary to decide the issue at this juncture of the case. While Art Leather asserts that it has a defense to avoidance under § 547(c)(2) (ordinary course of business), it has not demonstrated that with any evidence as part of its summary judgment motion, and has not asked the Court to rule in its favor as to any such defense on summary judgment. The Trustee does not concede the validity or amount of Art Leather's § 547(c)(2) defense. Accordingly, it remains to be determined, after a trial, whether and the extent to which Art Leather has any § 547(c)(2) defense to avoidance of the transfers at issue. Unless and until the Court determines that Art Leather has such a defense, it is not necessary to decide what is the correct method of applying the admitted § 547(c)(4) subsequent new value defense in relation to transfers subject to a § 547(c)(2) defense. The issue is not yet ripe for determination, and ultimately may drop out of the case. In ask-

---

**15.** Section 547(b)(5) requires the Trustee to prove that the transfer:

> . . .
>
> enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;

> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(5).

ing the Court to decide this issue now, Art Leather in effect asks the Court to give an advisory opinion. The Court must decline to do so.

### F. Conclusion.

For the reasons stated, the Court must deny Art Leather's motion for summary judgment. The Court will enter a separate order.