In re Carol A. HALLING, Debtor.

Randi L. Osberg, Trustee, Plaintiff,

v.

Gregory D. Halling, Defendant.

Bankruptcy No. 10–14488–7.
Adversary No. 10–303.

United States Bankruptcy Court,
W.D. Wisconsin.

May 9, 2011.

Randi L. Osberg, Christopher M. Seelen, Ruder Ware, LLSC, Eau Claire, WI, for Plaintiff.

Robert A. Wertheimer, Wertheimer Law Offices, S.C., Hudson, WI, for Defendant.

### DECISION AND ORDER

THOMAS S. UTSCHIG, Bankruptcy Judge.

In this adversary proceeding, the chapter 7 trustee seeks to recover certain payments made by the debtor on the grounds that they constitute preferential transfers under 11 U.S.C. § 547(b). As part of their joint pretrial statement, the parties stipulated to certain facts and submitted briefs on the relevant legal issues.[1] The Court conducted a telephonic hearing on the matter on April 18, 2011. Attorney Randi L. Osberg, the Chapter 7 Trustee, represented himself, and Attorney Robert Wertheimer appeared on behalf of the defendant. This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

The facts are these. The defendant, Greg Halling, is the debtor's son. The debtor sought but did not qualify for a $45,000.00 loan from Hiawatha National Bank. To help his mother, Mr. Halling agreed to guarantee the loan and to pledge his property as collateral.[2] The bank took a mortgage on Mr. Halling's real property. The loan required monthly payments of about $342.00. The debtor made the required payments during the year prior to

the bankruptcy, and paid the bank about $4,100.00 during that time. According to her bankruptcy petition and schedules, Mrs. Halling listed assets of $11,635.00 and liabilities of $72,201.00.

Procedurally, the parties each submit that they are entitled to judgment as a matter of law based upon the stipulated facts. The trustee contends that he has demonstrated the existence of an avoidable preferential transfer. Mr. Halling contends that he should not be considered a creditor of his mother, which if true would defeat the trustee's claim. Pursuant to Fed.R.Civ.P. 56(c), which is made applicable to this proceeding by Fed. R. Bankr.P. 7056, a party is entitled to judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When creditors know that a debtor is struggling financially, there is a temptation to do whatever they can to assure themselves of repayment (whether at the expense of other creditors or not). The bankruptcy code was designed to eliminate some of the incentive for creditors to race to the courthouse in an effort to seize some part of the debtor's possessions for themselves, and Congress created various mechanisms to ensure that some creditors do not get more than their fair

---

1. Other facts were described as contested in the joint pretrial statement, but they do not have an impact upon the preference determination.

2. According to Mr. Halling, the purpose of the loan was to pay for his father's funeral as well

as to consolidate other debts which his father had recently incurred. The trustee does not dispute this narrative. While these facts do not impact the outcome, they do illustrate the unfortunate situation now faced by both Mr. Halling and his mother.

share. One of those devices is the ability of the bankruptcy trustee to recover so-called "preferential transfers" of the debtor's assets that occurred within certain time periods prior to the bankruptcy filing. Essentially, a preferential transfer is simply one that gives a creditor more than it would have received through the bankruptcy process. As one court recently observed:

> A preferential transfer occurs when a debtor favors one creditor over another by paying that creditor to the detriment of other creditors. Preferences are treated with disfavor in bankruptcy because they contradict the fundamental bankruptcy policy of ensuring the equitable distribution of a debtor's nonexempt assets among similarly situated creditors.

*In re Eckman,* 447 B.R. 546, 548 (Bankr. N.D.Ohio 2010) (citing *Wheeling Pittsburgh Steel v. Keystone Metals Trading (In re Wheeling Pittsburgh Steel),* 360 B.R. 649, 651 (Bankr.N.D.Ohio 2006)).

 In order to prove that a particular transfer of assets was a preference, the trustee must demonstrate several things. The bankruptcy code provides that a trustee may avoid a transfer of an interest of the debtor in property which was "to or for the benefit of a creditor." The transfer must have been for or on account of an antecedent debt, the transfer must have been made while the debtor was insolvent, and the transfer must have enabled the creditor to receive more than it would have been received through the chapter 7 process if the transfer had not been made. *See* 11 U.S.C. § 547(b); *see also Gordon v. Sturm (In re M2Direct, Inc.),* 282 B.R. 60, 62 (Bankr.N.D.Ga.2002). The length of time a trustee can reach back and recover transfers depends upon whether the creditor is an "insider" or not. This is a statutorily defined term and relates to people who are somehow close to the debtor, such as corporate officers or relatives. Normally, the "look back" period is 90 days prior to the petition date, but if the creditor is an insider the trustee may recover transfers that occurred within the year before the bankruptcy. *See* 11 U.S.C. § 547(b)(4)(B).

The reason that Congress created an extended period for insider transactions is simple. In a corporate setting, insiders are typically the first to recognize that a company is failing, and they may have an incentive to pay themselves, or to pay obligations which might otherwise result in their personal liability. The longer preference period was established "[t]o address the concern that a corporate insider (such as an officer or director who is a creditor of his or her own corporation) has an unfair advantage over outside creditors." *See* H.R.Rep. No. 109–31(1), at 143–44, 2005 U.S.C.C.A.N. 88, 202. Likewise, in a personal bankruptcy a debtor is likely to want to avoid harming family members and will pay (or "prefer") debts which would impact them. The bankruptcy code strives to eliminate the incentive for doing so by providing that these payments (or transfers) can be brought back into the bankruptcy estate for the benefit of all unsecured creditors, not simply those closest to the debtor. *Eckman,* 447 B.R. 546, 2010 WL 6529646, at *2.

 Which brings us to the present case. The bank which received the payments from the debtor is not an insider, but Mr. Halling is. *See* 11 U.S.C. § 101(31)(A)(i) (if the debtor is an individual, the term "insider" includes a "relative of the debtor"). Mr. Halling guaranteed his mother's debt to the bank. Normally, a guarantor has a contingent "right to payment" from the debtor in the event the guarantee is actually called. This means that guarantors are normally "creditors"

within the meaning of the bankruptcy code. *See Levit v. Ingersoll Rand Fin. Corp. (In re Deprizio)*, 874 F.2d 1186, 1189 (7th Cir.1989). As the Seventh Circuit explained:

> Suppose Firm borrows money from Lender, with payment guaranteed by Firm's officer (Guarantor). [The Code] renders Guarantor an "insider." Guarantor is not Firm's creditor in the colloquial sense, but under ... the Code any person with a "claim" against Firm is a "creditor," and anyone with a contingent right to payment holds a "claim".... [I]f Lender collects from Guarantor, Guarantor succeeds to Lender's entitlements and can collect from Firm. So Guarantor is a "creditor" in Firm's bankruptcy.

*Id.* Payments to the "lender" in such a scenario are "for the benefit of" the guarantor because every reduction of the debt reduces the guarantor's potential liability to the lender. *Id.* In response, Mr. Halling suggests that because he would "never" attempt to collect anything from his mother, he should not be considered a creditor of the bankruptcy estate. Unfortunately, that fact alone does not alter the outcome.

It is the contractual relationship of the parties which determines whether Mr. Halling is a creditor of the estate, not statements or representations about whether he might actually exercise those contractual rights. As such, the terms of the loan documents are important. In some cases, courts have suggested that the presence of a written waiver of subrogation or indemnification rights in the loan documents might affect the determination that a guarantor is a "creditor" of a debtor's estate. *See Hendon v. Associates Commercial Corp. (In re Fastrans, Inc.)*, 142 B.R. 241, 243–44 (Bankr.E.D.Tenn. 1992); *In re Buckhead Oil Co., Inc.*, 2011

WL 1364227, at *6 (Bankr.N.D.Ga. Mar.21, 2011). Other courts have questioned whether such waivers are enforceable because they attempt to contractually eliminate a provision of the bankruptcy code. *See Telesphere Liquidating Trust v. Galesi (In re Telesphere Communs.)*, 229 B.R. 173, 177 n. 3 (Bankr.N.D.Ill.1999) ("The attempted waiver of subordination rights was thus held to be a sham provision, unenforceable as a matter of public policy.").

The Court need not address this issue because Mr. Halling has not pointed to any language in the contractual documents which purports to waive his right to contribution or indemnification from his mother should he be required to pay the guarantee. Instead, he simply argues that given their family relationship, he would have paid the bank if required to do so and never sought repayment from his mother. While that is an admirable sentiment, the bankruptcy code focuses upon what he has a *right* to do. Certainly in the absence of a waiver of his subrogation rights, Mr. Halling has a contingent "right to payment" from his mother. That right constitutes a "claim" under 11 U.S.C. § 101(5)(A). As the holder of a "claim," Mr. Halling is a "creditor" of his mother's estate. *See* 11 U.S.C. § 101(10)(A). Consequently, her payments to the bank were for his benefit because each reduction in the debt reduced his possible exposure to the bank. *Deprizio*, 874 F.2d at 1190.

It must be noted that a portion of the ruling in *Deprizio* has been overruled by subsequent legislation. The Seventh Circuit ruled that in this type of a situation the trustee could recover from the bank as well as the guarantor, even though the bank was not an insider. Congress subsequently changed the preference laws to provide that preference claims against *non-insiders* were limited to the transfers

which occurred within 90 days of the filing. *See* 11 U.S.C. §§ 547(i) and 550(c); *Official Comm. of Unsecured Creditors of ABC–NACO, Inc. ex rel. ABC–NACO, Inc. v. Bank of Am. N.A.*, 402 B.R. 816, 820 (N.D.Ill.2009); *In re Arkansas Catfish Growers, LLC*, 2007 WL 215815, at *3 (E.D.Ark. Jan.25, 2007). However, those changes did not alter the fact that the transaction in question created an avoidable preference, or that the trustee could recover from the guarantor even if the bank could no longer be sued.[3]

■ The code contemplates that the trustee may avoid the transfer of an interest in property which was "to or for the benefit of a creditor." *See* 11 U.S.C. § 547(b)(1). Conceptually, this means that the trustee may recover from *either* the initial transferee (such as the bank) or the transfer beneficiary (in this case Mr. Halling). *See* 11 U.S.C. § 550(a)(1) (trustee may recover the property transferred or the value of such property from "the initial transferee of such transfer or the entity for whose benefit such transfer was made"). It is possible for a trustee to seek to avoid preferential transfers and recover them in an action brought only against the guarantor. *See Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC)*, 340 B.R. 829, 838 (Bankr.E.D.Mich.2006); *Menninger v. Attiyah (In re Midwest Mobile Techs., Inc.)*, 304 B.R. 787, 788–89 (Bankr.S.D.Ohio 2003); *Gordon v. Sturm (In re M2Direct, Inc.)*, 282 B.R. 60 (Bankr. N.D.Ga.2002). As the court observed in *Connolly:*

> There is no reason apparent from the wording of § 547 why the Trustee could

not file an avoidance action only against the transfer beneficiary, and if successful in avoiding the transfer, seek recovery under § 550(a)(1) from that transfer beneficiary.... [E]ither the initial transferee or the transfer beneficiary, or both, can be sued for avoidance. The absence of the initial transferee as a defendant in the action, without more, does not preclude avoidance of the transfers at issue under § 547(b).

340 B.R. at 838. The fact that the non-insider creditor is shielded from liability does not affect the guarantor's liability as the beneficiary of a preferential transfer. *See M2Direct*, 282 B.R. at 63 (the bankruptcy code provides no relief to an insider guarantor and "an insider guarantor can still be liable for preferential payments made by the debtor to outside lenders during the expanded reachback period"); *In re Arkansas Catfish Growers, LLC*, 2007 WL 215815, at *2 (E.D.Ark. Jan.25, 2007) (debtor was incorrect that trustee must first avoid the alleged preferential transfer as against the initial transferee before seeking to recover from the guarantors).

■ As such, the payments may be avoided as preferential transfers unless they fall within a statutory exception. Mr. Halling has not identified any provision which would prevent avoidance other than his vague assertion in the joint pretrial statement that the debt was given "in the regular course of business" and that he did not receive any benefit from the payments. As already indicated, the second contention is factually and legally incorrect; each

---

**3.** In fact, Congress clearly contemplated that it would still be possible to recover preferential payments from insiders. Section 547(i) provides that if the trustee avoids a preference that occurred outside the 90–day non-insider window, the "transfer shall be considered to be avoided under this section *only*

*with respect to the creditor that is an insider.*" (Emphasis added) Likewise, § 550(c) provides that the trustee may not recover an insider preference from a transferee "that is not an insider," but offers no insulation to insiders themselves.

payment his mother made reduced his potential liability under the guarantee, which he otherwise would have been obligated to pay. As to the first issue, the loan in question was clearly unusual for both Mr. Halling and his mother. There is no indication that he regularly guaranteed her obligations or that this was part of their normal pattern of dealing. Instead, it appears to have been an extraordinary transaction intended to facilitate his mother's debt consolidation efforts. Without any factual support, the argument that this was part of an ordinary course of business cannot succeed. *Eckman,* 447 B.R. 546, 549.

The Court recognizes that Mr. Halling was attempting to do the "right" thing by helping his mother. But her payments to the bank had the effect of benefitting him at a time when other creditors were going unpaid. Because of his family relationship, the bankruptcy code expects that the "benefit" he received should be shared with other unsecured creditors. As a result, the Court must find that the transfers may be avoided and that the trustee may recover those amounts from Mr. Halling as the beneficiary of those transfers.

Admittedly, the application of the preference rules can lead to unfortunate results in particular cases, and this appears to be one such case. It might seem that the rules should be limited to corporate cases or cases where the transfers seem to suggest some sort of bad faith by the parties. But the code applies to all cases and requires the recovery of preferential transfers even where the defendant did nothing except receive a benefit Congress directed should be spread among all unsecured creditors.

One final note is necessary. In Mr. Halling's pleadings there is an indication that his mother wishes to amend her bankruptcy schedules to claim an exemption in the transferred payments. As the trustee notes, however, the debtor voluntarily made the payments to the bank. A debtor in bankruptcy may not claim an exemption in property recovered by the trustee under § 550 if the transfer was voluntary in nature. *See* 11 U.S.C. § 522(g); *In re Witt,* 273 B.R. 573, 574 (Bankr.W.D.Wis.2000). In this case, Mrs. Halling made voluntary payments to the bank which benefitted her son. When the trustee recovers the value of those payments from Mr. Halling under § 550(a)(1) (as he is "the entity for whose benefit such transfer was made"), she is not entitled to subsequently claim them as exempt.

Accordingly,

IT IS ORDERED that judgment shall be entered in favor of the trustee against Mr. Halling in the amount of $4,103.52.